May it please the court, my name is Stephen Wessinger. I'm representing the appellant Self Insurance Institute of America. With me is my colleague, Mr. John Eggerson. We would like to reserve four minutes for rebuttal, if that's all right. Your Honors, as the briefing establishes, including, I should emphasize, the Amici briefs, this case involves a very significant issue about the ability of the State of Michigan to regulate self-funded ERISA plans and union funds that provide benefits. As the briefing makes clear... You say the ability to regulate. Wasn't it just a tax? No, Your Honor. It is more than a tax, because that tax carries with it an administrative structure that you must comply with to compute the tax, to pay the tax, and then to be subject to State audit and State sanctions if you do not do things the way the State wants you to do things or orders you to do, mandates you to do things, to use the ERISA language under the statute. So the tax is a starting place, but it is not the ending place. But even the tax, Your Honor, I would emphasize, because I'm sure this comes up at some point, the tax is not the type of tax that this Court has considered in Noosa or Theocal or the other kinds of taxes which are on non-ERISA entities. They are on employers or workers. In Noosa, Judge Boggs was on that opinion. The tax was a tax that was imposed on the employee, and the question was whether you got a deduction for employee benefits. The Court said no, and in Theocal it was the Michigan Single Business Tax. In neither of those cases was there any involvement by the ERISA plan, any obligation imposed on the ERISA plan, much less an attempt by the State to take monies from an ERISA plan. And that's why, even if it were merely a tax, I would suggest in this case, because it's directly imposed on the plan and because it takes plan assets to satisfy the tax, that it would still be subject to preemption. But couldn't the State impose a tax of general applicability? Wouldn't you concede that? Yes, Your Honor. So the key is the administrative... No, I think, well, I don't think we have to get to where you're going, but I think the question is always, and I think we go back to Noosa. Clearly, this legislative history makes very clear that the fact that the State laws a tax is interesting but not dispositive. It's something to be considered. In the tax, you have to then look at the tax and determine whether the tax has a connection with and impacts these core ERISA functions. Among the core ERISA functions are reporting and record keeping. One of the things that is a legal issue of the scope of preemption that this case squarely puts before the court is if you look at Judge Cook's opinion at the end, where he talks about it didn't impact claims and benefit paying, and therefore he admits the burden and just says, well, it didn't impact claims and benefit paying. And they then, the State in their brief, basically say the only time you can have ERISA preemption is if you impact claims and benefit paying. Now, as Your Honors are well aware, everybody starts today from travelers. And travelers makes very clear at 651 that ERISA controls the administration of benefit plans. That's what section 2 of ERISA says, not benefits, benefit plans. And then travelers looks at the statutory structure and says, we look at report. The first thing they talk about in travelers at 651 is reporting and disclosure mandates. And that's sections 101 through 111 of ERISA. Those reporting and disclosure mandates are core ERISA concerns. If you go back to the beginning, when ERISA was passed, one of the concerns was that pension funds and welfare funds were not adequately reporting the state of their affairs and their assets. So reporting was actually the first thing that ERISA dealt with. This case clearly impacts reporting and record keeping. And it exposes plan administrators to liability under state law if they don't comply with state law, which creates a core problem with the difference between their fiduciary responsibility under ERISA to manage the plan in accordance with the plan documents and this obligation to review state law and decide under state law whether they've complied with state law and to subject themselves to audits and sanctions if the state disagrees with how they've complied with state law. Are you aware of any similar laws in other states that have been litigated or that we know anything about how they operate? Yes, Your Honor. And the reason I ask that is that at least one concern would be possibility of conflicting regulations or conflicting demands for a type of record keeping. I misunderstood the scope of your question. Let me answer it in two different ways. There is a case, actually we were involved in that case, NGS versus Barnes in the Seventh Circuit, I mean the Fifth Circuit. Now admittedly it's a pre-traveler's case, but I don't think, I mean NUSER is a pre-traveler's case. Everybody wants to use travelers as this great bright line, but anyway, NGS versus Barnes involved a Texas statute that imposed reporting requirements on administrators of ERISA funds. And the Fifth Circuit, and we cite NGS versus Barnes at some length in our case, if you look at our reply brief at page seven, we cite the relevant language from that case where they required the ERISA plan to report and to keep records and do things of that sort. And the Fifth Circuit said that is precisely the type of state law that... Okay, I'm aware of that. Okay, now to your second question, and that's what I misunderstood, Your Honor. I am not aware of any state that has tried since Barnes to do anything of this sort, to directly regulate. Okay, but because again, maybe I wasn't clear, I thought some of the briefs make emphasis on the fact that they have to determine who is a resident and where the service is performed. Because if I'm right, this only applies to Michigan residents, service in Michigan. Yeah, provided benefits in Michigan. Providing benefits, well, but for service in Michigan, am I right? That is, if you live in Michigan and you go to Singapore to have your kidney removed, this is not going to apply. But you still have to determine who is a resident, and at least for some types of things, it might be whether the benefit, you know, if you have a prescription that can be filled in Toledo one day and in Detroit the other, I don't know. But I was trying to say maybe some other state would have a regulation where you would be cross-determined. Suppose Florida decides to tax somebody because they say they're a Florida resident, and Michigan wants to tax a benefit because they say there's a Michigan resident. So that's why I was asking whether anybody else was. But is that a potential horrible in your view? Well, first of all, I don't think to use the term horrible, that's the word they try to suggest, that this is a kind of a creation, a figment of our imagination. There are real horribles. But here's my point. To your point, I am not aware currently of some other state that has a similar statute. I am of the opinion that if you can do this, other states will do it. Why not? Why not tax an ERISA plan, and why not impose them to recordkeeping? Now, let's deal with, I think the case that's pretty interesting in that regard is Eaglehoff. And the reason I say it's interesting is because everybody wants to focus, on the one hand, on Eaglehoff's requirement that you impose this, that you apply this probate test in terms of how you do with spousal benefits, etc. That was only half of Eaglehoff, because the Washington statute in Eaglehoff gave you an opt-out. And so the state of Washington said, you're not burdened, all you have to do is opt-out. No problem. And the Supreme Court said, no, that opt-out is itself a problem. Because if you have a state law that allows you to opt-out, the plan administrators have to be on guard, all the time, surveying state law to figure out whether the opt-out changed or didn't change, whether some other state now has it, doesn't have it. And that was the same thing if you look at the Fourth Circuit's opinion, in the retail trades case, which was the Walmart where they tried to impose a mandated benefit. There were two parts of that decision. One related to the mandated benefit, but the other related to the fear that these state statutes would impose a duty to monitor and test and examine state law. Now let's deal with the residency issue, because I think that is a hard one. And I think the people that did a better job of briefing that than I, quite candidly, are the Amici, the union funds, because they deal with this every day. And the union funds, unlike some other funds, don't have any source of money. Every dollar they spend is all they've got. It's not like they can go back to an employer and do something. That's subject to a collective bargaining. So a union fund now has an obligation under the Affordable Care Act to insure a person up through age 26. That student moves to Florida. You get a bill from Florida. Okay, that's easy. It's a service rendered in Florida. Now the person comes back to Michigan, gets a service in Michigan. Is he a Florida person? Is he a Michigan person? The tax only applies if he's a Michigan resident getting services in Michigan. So do I have to call up the student and say, Sir, are you now a full-time resident of the state of Florida? Well, no, I'm going to school in Florida. Okay, that kind of administrative burden is precisely what we have to worry about, Your Honor, and I think that answers your question, because it's the threat of that type of continued monitoring that imposes such a big burden on this. And so the way the state gets out of it, and the way, candidly, Judge Cook got out of it, is by saying, well, that doesn't impact claims administration. Well, first of all, it does, I mean, with all due respect. Am I out of time? I'm sorry. Yeah, thank you. No, that's fine. Further questions? Okay, fine. You'll have your time for rebuttal. Thank you, Your Honor. Good morning, Your Honors. Aaron Lindstrom for the State of Michigan. My colleague, Eric Kostuchy, is here as well. May it please the Court. Arrested preemption, as the Supreme Court has explained, must be limited in scope because it infringes on the state's authority. It's particularly true here when it's in a tax area, which is one of the state's core authorities, and the Supreme Court specifically recognized that in De Bono. This Court recognized that in FIACA. This is a particularly important issue here to Michigan because the revenue generated from this assessment goes to pay Medicaid funding in Michigan. This act provides for raising up to $400 million a year that is then able to be applied to the needy. You know, to that $400 million, does all of that come from ERISA plans or a small part or a large part? I don't know the specific breakdown, but it comes from insurers and HMOs and ERISA plans, so it comes from a mix of them. It basically applies broadly to everyone who is in that market. So it's a general law of applicability, and since it's a general law of applicability, the question is, does it impose a mandate within the area that ERISA addresses? But as opposed to, say, the new SORURA tax on many entities, this is a tax on entities of which ERISA plans are a significant amount. It's in that core area. They are a significant amount. It's not like a general gross revenue tax or something of that sort. That's correct. It is a significant amount. But we don't know from the record whether it's a majority or 30 percent or 10 percent. We don't know that. I do know that in the New England decision that we cite in our brief, it was a decision by the Second Circuit, they upheld a tax anyway, even though ERISA plans provided 70 percent of the revenue under it. So that fact is not something that would be— Counsel, let me ask you, at least for this judge, my core concern. I'm not so concerned about the money of the tax, but travelers in other cases say that one of the big concerns of the preemption was to avoid a multiplicity of regulations to permit nationally uniform administration. So talk about this state limitation, the residency, the benefit. We know Florida has funny residency rules. If Florida enacts a similar law, and you've got either a direct conflict of people that both states claim as residents, so that different ones want to tax them twice, or that simply the different plans in the different states have to be worrying and apparently deciding all the time who's a residence and who is not, doesn't that impact the multiplicity of regulation part? It doesn't, because what the regulation is concerned about is the things that are within the scope of what ERISA is about, the objectives of ERISA. This court has identified three areas that are kind of inside the box of what ERISA is preempting. And the administration is one of those, but it's the administration of the plan, not the administration of this tax. This tax happens after all the decisions that are in the box that ERISA covers have occurred. So, for example, the ERISA box covers what choices the plans can provide for benefits. You're trying to cut it off at the point that they pay the benefit and any other burdens are outside that box. Right, I'm saying that's a black box, and Michigan isn't even looking inside that box at all. Help me with this, because the citation, the law, some of them say, well, it's not preempted if it's remote, tangential, and peripheral. And to me, this is a lot closer than that. And then you've got your kind of black box, and then there are other cases that use words like significant effect. Yes, Your Honor. What's the strength of the different cases that use those tests? In other words, what's the strength of your best case that says, no, no, only if it affects the check between them and the recipient is there any ERISA preemption? Where are you getting that one from? I think that point, which ties into the black box analogy, comes from Mackey, where it talks about even significant administrative burdens could be okay. That was the garnishment case where there were 50 different state garnishment laws, so they acted like taxes might hear. That's a very, you might say, non-health focus. That is, ERISA plans are employers just like every other employer who has to garnish wages. That's true, but Travelers was specifically health care-focused. It was about surcharges in hospitals. In the Travelers decision itself, the Supreme Court talked about Mackey, and it reiterated this point about significant burdens and said even though they're relying on significant burdens, I think the language from Mackey is helpful. Travelers said, we took no issue with the argument of the Mackey plan trustees that garnishment would impose administrative costs and burdens upon benefit plans. They still concluded there was no preemption because of the text and structure of ERISA. That's true here as well. The text and structure of ERISA wasn't intended to preclude states from addressing taxes generally, and this is a generally applicable tax. I'd like to answer your question about residency if I could, because residency is a determination that is a question of how the act applies. It's not a question about how the plan applies. In other words, when an ERISA plan is trying to decide whether it wants to pay a claim in the first place, it can do its own residency determination. All that matters is once it's paid that residency, once it's made that determination under whatever standard it's applying and it's determined the person's covered, they're a beneficiary, the right amount is being paid, then they pay the claim. That output from the black box, they've already made all the choices that they're supposed to be able to make. Will they have made the decision that the person is a Michigan resident when they pay the claim? Or don't they pay the claims of everybody who's covered? We could use the hypo of the 25-year-old kid on the parent's plan. Well, they're going to be deciding whether or not the plan covers this person. They're going to apply whatever residency requirements they have, and then once they have paid it, they may have no residency. They wouldn't have a residency requirement for the kid on the parent's plan, would they? Probably not, and that goes to show that it's a separate question. The plan can have whatever rule it wants about residency. The question is when they pay it in Michigan, that's a transaction that occurs in Michigan that could be taxed. You're just saying there may be a multiplicity of regulations, but you don't think of them as a risk. The way I'm thinking about it is they say, hey, Michigan, we're not going to pay you any tax because this guy's moved to Florida, and Florida is making us pay a tax. And you say, no, no, we think he's still a Michigan resident, so we want you to pay our tax on top of the Florida tax, and we want you to come and fight with us about where he's a resident. That's the multiplicity of regulations. That's a tax question. And you say that just doesn't matter. It's a garnishment question. It's similar to Mackey. It's a tax question. It doesn't matter what the plan says about residency. It can define it. At least in my hypos, the plans say nothing about residence. I mean, you're a union member. If you're covered because you're a trial trade worker, the plan doesn't care where you are. You can move to Singapore and still pay. I'm trying to agree with you. The point I'm trying to say is that residency only matters, as defined under the tax, for determining whether that tax applies. So it may be a great burden. It's just not an ERISA preemptive. It's not an ERISA burden. Well, it's not an ERISA burden because, for example, if you think about the reporting requirements, that's the hook for this, is that it imposes lots of reporting requirements for taxes. But the reporting requirements that ERISA actually talks about are requirements that go to two things. One is providing information to the beneficiary about what their rights are. So that's why there's a summary plan description they get. That's why they get a benefit of rights statement. The second set of requirements is about the funding of the plan. One of the concerns of ERISA was making sure that these plans were being properly funded. That's why some of the reporting requirements include a notice to meet failure to meet minimum funding. If a plan is not going to be able to meet its minimum funding, it has to notify the Department of Labor and other people. There's also annual financial reports. What would be your best case to make this distinction between reporting requirements of the ERISA law and reporting requirements of the tax act? I think that the tax cases, I think De Bono, for example, in that case is a gross receipts case. That would have involved the same types of tax steps, I'm sure, in York, when it imposes the gross receipts tax. It would have had audit procedures that would have looked into that tax. The entity's tax would have to produce information about their gross receipts and compensation that they paid to the ERISA plan. That was why the tax was at issue in ERISA in the De Bono case, is that compensation was going to the ERISA plans. So those things directly relate to ERISA. This is only by analogy. If states start wanting to regulate the summary plan descriptions, let's say, everything from they have to be printed by union labor or they have to be printed on recycled stock or they have to be written in good English and we want them to all be sent to us so we can have our grammarians look at them, those are all okay also? No, those are not okay because that's the difference. We're not making them change any of them. We're just making them report and we're going to audit. But those go to the issues that ERISA is a core ERISA function, reporting on what the benefits provided are. It's not a core ERISA function when a claim has actually been paid. Another way to look at it is we're not mandating that they do anything different. It's not providing any different coverage. The plan still gets to make decisions about who's covered, about what coverage should be provided. For example, we're not saying you have to provide mental health benefits, which was the Metropolitan Life case, or that you can only cover people, that you can't impose restrictions on divorce, which is Egelhoff. All those cases are about what benefits are provided, whose benefits, who the benefits go to, and the amount. And this is after all those decisions are made. So if you look at the language in PONY, which is one of those core's leading cases here, it talks about things that mandate specific choices or mandate particular structures. And we're not mandating any particular structures or choices here. They can make all these choices. It's only after they've made those choices and this output comes out from the black box of areas that are preempted, it's only at that point that the assessment kicks in. So this residency is a question under state law. It doesn't affect the decisions the plan can make. The records that are being required are all decisions that are all only after all of those decisions about state law, excuse me, about a risk have been made. So it's not interfering with the decisions or the reporting requirements. I think if a state were to impose additional funding requirements, that's the type of thing that would be preempted. So if a state were saying you need to report to us about the financial stability of the plan, that's the type of thing that would be preempted because that goes to the core question of is this plan fully funded. That's not what's going on here. Even if the reporting that you call it there didn't impose any regulation? I mean, for example, you say we're concerned, so we'd just like to get some reports. We've got some forms. We'd like you to fill out some forms here. Because if you went broke, it would hurt our state citizens just the same way if you don't pay our money, it's going to hurt our state citizens. And that's in the case my colleague cited from the Fifth Circuit. That's why it was preempted, because Texas was imposing additional requirements on reporting about funding levels. That's completely different from what Michigan is doing. Michigan is saying we're not looking at funding levels. We're saying once you've paid a claim, you've made all the decisions you're entitled to make, then at that point all the ERISA decisions have been made and we're just imposing a tax on that transaction. If an ERISA plan bought some computers and then there was a sales tax on that, it's the exact same thing. We'd look at the receipt. We'd say, okay, they paid it. We're not looking beyond the receipt to see if it was a good choice, if they paid the right amount. We're accepting that. So the real thorny question seems to be the residency aspect. The sales tax idea may be, I'm just sort of wondering really, you know that the item is purchased in Michigan. We've got the Internet problem, which is another problem, whereas the problem with our mobile society is we have people who may get one of your requirements is that the services are performed in Michigan, right? The health care services. Services for a resident in Michigan. And the other one is the resident. It's not going to be hard to decide if the services are performed in Michigan probably, but this residency thing, is that imposing an ERISA-banned burden? No, because it's not saying you can't provide a benefit to this person because of their residency. It's not saying the amount you have to provide in ERISA benefits to this person. It's saying whatever the ERISA plan says about, you can be totally indifferent to where the person lives. The ERISA plan might impose a requirement about where the person lives. All of that is irrelevant to whether Michigan taxes it. All that matters is when that transaction occurs in Michigan, after the plan has decided we are going to cover this person, we're satisfied that this person should be covered whatever residency requirements may or may not exist. After they've paid the claim, all of their decisions that might relate to residency are done. And then the residency requirements of the act are not looking at any of those core ERISA functions. They're just looking at the transaction that happened. And in a sense, Michigan, by limiting it to Michigan residents, is giving a benefit to the ERISA plan that they're not going to have to pay the tax on non-Michigan residents, even though the service was performed in Michigan. You might see it that way. It's probably also a limitation on our authority that we have certain connections to Michigan before we can tax something. But it's certainly not a harm to the state. And another factual question you asked earlier, Your Honor, if there are any other states that have this sort of thing, Maine is the only one that we're aware of that has this sort of thing. As an aside to then talking about where a service is performed, I presume many plans cover drug benefits. So if a Michigan resident has three homes and orders drugs over the Internet, does it depend on where they're delivered? Or where is the service performed in the case of drug purchases? Yes, Your Honor, that does matter for purposes of the tax. But it doesn't change what the requirements of the plan are. So in other words, the plan. You're not giving me an answer in the sense that you're saying it may be very complicated. I don't know the answer, but it doesn't matter. No, I do know the answer. What is the answer? If the thing is delivered into Michigan, there's a regulation that's been promulgated on this. It's considered to have happened in Michigan. If it's delivered elsewhere, then it isn't. It's not. We only tax the ones where the drug is received in Michigan. Okay. Good. That's a fair answer. Okay. Any other questions, then, judges? Okay. Thank you, counsel. Thank you, Your Honor. We have four minutes for rebuttal now. I know it's not dispositive, but you asked a question about benefits. I think you can assume based on the fact that union trust funds and self-funded plans pay more than 50 to 60. By any survey, they're in that 50 to 60 percent of this tax is going to be paid. Second of all, let me. Just quickly. The argument is basically that the residency determination creates a primary administrative function. You have to do the having contemplated, right? That's part of the argument. I think the real argument is, suggested by Judge Boggs' questions, that if you can start doing these things, then as an administrator, you start having to survey all of these state laws all the time and find out. So in this case, maybe it's residency. In the next case, maybe it's something else, to use Judge Boggs'. The flaw in the argument is that because ERISA only says some things, we can say more things. That's why the reporting. If you look at the cases that have existed on reporting, it's not Texas was But it was on things that ERISA required reporting on, right? No, not just that. Because ERISA's reporting requirements are different. There's no ERISA reporting requirements on report on how many claims you pay to residents or here or even to have. None of those things are required by ERISA. These are in addition to. Here's the problem with the argument. That's why I say you have to go back to travelers. I'm a bigger traveler's advocate than they are because that page of travelers, 651, that says ERISA controls the administration of benefit plans, and then it goes through the statute. And it talks about 101, 111, et cetera. They say as long as it doesn't involve claims administration, it isn't an ERISA concern and we can burden it all we want. Well, Your Honor, you wrote the Smith opinion on preemption of fiduciary duty requirements. ERISA has fiduciary duty requirements. You can't use state law to increase, change, do whatever you want on those even though it has nothing to do with claims paying. ERISA has participation investment requirements. It has all sorts of things. So it's not just that some things are. The question is not whether you can say, well, as long as we don't do exactly what ERISA does, we can do something else. It's that we're entitled to uniformly administer our plan. Now, the reason residency is such an obvious issue is because of all the problems it creates. If you really look at what they said in their brief about residency, they said, well, what we meant by residency is domicile. What is domicile? It's a question of intention. So do I have to poll all my people every day? Kid's a college student. Are you moving to Florida permanently or are you a Michigan resident? And return to Michigan. Yeah, and so what are we supposed to do, poll every day? And it is nonsense with all due respect to say, well, you make this benefit determination here and do all this other stuff here because in reality, if you're keeping records, you're looking at things. One requirement is that the benefit be received in Michigan, right? Yes. And won't the state be using as a proxy for residency the mailing address of the person? Well, why is that right? And why does that have anything? That isn't what they in fact say. They say we're using domicile. And oh, by the way, the mailing address can change all over the place. What they say is we're using domicile. Now I will suggest to you that probably until all this gets sorted out, there are all kinds of people trying to figure out shortcut ways to do this besides having to call a guy up every day. But it's not just whether the benefit is used. You hit on it in terms of the pharmacy benefit manager. Billing, here's another thing. See, this is why it is so easy to say it's different, but it's so hard to do it in practice. St. John's Hospital, Detroit, Michigan. Big hospitals, Ascension Healthcare, multifamily. They have a billing agency, let's just say, in Ohio. So the bill comes from Ohio. Do I have to call up and say, you sent me a bill for a guy that I think lives in Michigan for Ohio. Was that service provided at St. John's in Michigan or was that a private? And that burden is going to be imposed on non-ERISA plans, right? It is. That part is true, but the difference is non-ERISA plans don't have a preemption. I mean, we've had this back forever. John and I dealt with the case on the coordination of benefits cases. That lasted a long time because there was a question about whether coordination of benefits was a difference between if you were an insurer or if you were a self-funded plan. That thing sorted itself out. Anyway. Any other questions, judges? Thank you. All right. Thanks so much. Submitted quite an interesting case. The clerk may call the next case.